# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| CELIA SANCHEZ and OSCAR SALAS, statutory death beneficiaries of ERIK EMMANUEL SALAS-SANCHEZ, §<br>§<br>§<br>§<br>§<br>§<br>§ | | |

CELIA SANCHEZ and OSCAR
SALAS, statutory death
beneficiaries of ERIK
EMMANUEL SALAS-
SANCHEZ,
     Plaintiffs,

v.

MANDO KENNETH GOMEZ,
ALBERTO RIVERA, PAMELA
SMITH, and the CITY OF EL
PASO, TEXAS,
Defendants.

§§§§§§§§§§§§§§§§

EP-17-CV-133-PRM

## MEMORANDUM OPINION
## AND ORDER DENYING DEFENDANT
## MANDO KENNETH GOMEZ'S, ALBERTO
## RIVERA'S, AND PAMELA SMITH'S MOTIONS TO DISMISS

On this day, the Court considered the following motions:

- Defendant Mando Kenneth Gomez's "First Amended Motion to Dismiss Plaintiffs' First Amended Complaint" (ECF No. 23) [hereinafter "Gomez Motion"], filed on June 29, 2017;

- Plaintiffs Celia Sanchez and Oscar Salas's [hereinafter collectively referred to as "Plaintiffs"] "Response to Defendant Mando Kenneth Gomez's Rule 12(b)(6) Motion to Dismiss" (ECF No. 32) [hereinafter "Gomez Response"], filed on July 24, 2017;

- Defendant Gomez's "Reply to Plaintiffs' Response" (ECF No. 39) [hereinafter "Gomez Reply"], filed on July 31, 2017;

- Defendant Alberto Rivera's "Rule 12(b) Motion to Dismiss" (ECF No. 20) [hereinafter "Rivera Motion"], filed on June 28, 2017;

- Plaintiffs' "Response to Defendant Alberto Rivera's Rule 12(b)(6) Motion to Dismiss" (ECF No. 31) [hereinafter "Rivera Response"], filed on July 24, 2017;

- Defendant Rivera's "Reply to Plaintiffs' Response in Support of His Rule 12(b) Motion to Dismiss" (ECF No. 41) [hereinafter "Rivera Reply"], filed on July 31, 2017;

- Defendant Pamela Smith's "Rule 12(b) Motion to Dismiss" (ECF No. 19) [hereinafter "Smith Motion"], filed on June 28, 2017;

- Plaintiffs' "Response to Defendant Pamela Smith's Rule 12(b)(6) Motion to Dismiss" (ECF No. 30) [hereinafter "Smith Response"], filed on July 24, 2017; and

- Defendant Smith's "Reply to Plaintiffs' Response to Defendant Smith's Rule 12(b)(6) Motion to Dismiss" (ECF No. 40) [hereinafter "Smith Reply"], filed on July 31, 2017,

in the above-captioned cause. For the foregoing reasons, the Court will deny Defendant Gomez's, Rivera's, and Smith's [hereinafter collectively referred to as "Defendants"] motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Courts must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Ramming v. United States*, 281 F.3d 158, 161–62 (5th Cir. 2001). Thus, the following facts

2

skew in favor of Plaintiffs, and the Court presents Defendants' version of events merely for context.[1] To the extent there are discrepancies between the accounts, the Court accepts Plaintiffs' alECFlegations as true.

Plaintiffs are the parents of decedent Erik Emmanuel Salas-Sanchez. Pl.'s Am. Compl., June 15, 2017, ECF No. 17 [hereinafter "Amended Complaint"]. At all times relevant to the allegations in the Amended Complaint, Defendants were employed as police officers by the City of El Paso Police Department. Am. Compl. 2. On April 29, 2015, Erik Salas-Sanchez was twenty-two-years-old, stood five-foot-seven-inches tall, weighed 117 pounds, and lived with his family in El Paso, Texas. *Id.* On that same day, Defendants Gomez and Rivera responded to a police call from Mr. Salas-Sanchez's neighbor, Ms. Romero, claiming that Mr. Salas-Sanchez had been "present in her home unexpectedly but left." *Id.* Defendants Gomez and Rivera allege they were responding to a "burglary of a habitation" in progress, Gomez Motion 2, but Plaintiffs claim that Ms. Romero never told the officers

---

[1] Because Defendants' recitations of the facts in each of their Motions are substantially similar, the Court uses the facts as alleged in the Gomez Motion as representative of the facts alleged by all Defendants for purposes of this Order.

that a burglary had occurred, Amended Complaint 2–3. Plaintiffs further allege that Ms. Romero informed the officers that she did not want to pursue legal action against Mr. Salas-Sanchez claiming that he was not a threat to her or her family when he was in her home. Am. Compl. 3.

After speaking with Ms. Romero, Defendants Gomez and Rivera went across the street to Mr. Salas-Sanchez's family's residence and began speaking with Plaintiff Celia Sanchez, Mr. Salas-Sanchez's mother. *Id.* During the conversation, Mrs. Sanchez informed the officers that her son had been acting strange and exhibiting signs of mental illness. *Id.* Around this time, Defendant Smith arrived at the scene. *Id.*

Plaintiffs claim that Mrs. Sanchez spoke calmly with the officers at her door while simultaneously speaking with her son and telling him "the police [were there] to talk with her, not him." *Id.* at 4. Despite this, Mr. Salas-Sanchez began telling the officers "to leave as he believed they had no right to be at his home." *Id.* Plaintiffs then claim that "[a]fter an extended period of time speaking with Mrs. Sanchez, and frustrated by [Mr. Salas-Sanchez's] insistence that they leave the

4

home, Defendant Officers pushed Mrs. Sanchez out of the way and entered the home without consent and without a warrant." *Id.*

Once inside the house, Plaintiffs claim that Defendant Gomez drew his service weapon and Defendant Rivera drew his taser and they pointed the weapons at Mr. Salas-Sanchez, at no time announcing that he was under arrest. *Id.* at 5. While the Defendants pointed their weapons at Mr. Salas-Sanchez, his sister stood in the living room watching the encounter with a newborn infant in her arms. *Id.* at 5.

Then, although Mr. Salas-Sanchez was not resisting arrest or making threats, Defendant Rivera deployed his taser, which struck Mr. Salas-Sanchez but failed to lodge in his skin. *Id.* at 6. Defendant Rivera claims that he deployed his taser because Mr. Salas-Sanchez had an unidentified object in his hand and "refused to follow verbal commands to drop the object he was holding." Rivera Mot. 2. "Panicked" by Defendant Rivera's use of his taser, Mr. Salas-Sanchez "moved away" from but "did not make any aggressive movements towards Defendant Officers." Am. Compl. 5. At that point, Defendant Gomez fired five rounds from his service weapon at Mr. Salas-Sanchez, striking him twice in the back and once in the buttocks. *Id.* at 6. The

shots proved fatal, and Mr. Salas-Sanchez was pronounced deceased upon arriving at the hospital. *Id.* No weapon was ever recovered at the scene. *Id.* Defendant Gomez claims that the officers ordered Mr. Salas-Sanchez to put down an object he was holding, but he refused to comply. Gomez Mot. 3. He further claims that, "eventually, the Decedent lunged at [him] inside the home and [he] shot the Decedent." *Id.* However, none of the Defendants elaborate on what this object was, and no firearms, knife, or any other weapon was ever found at the scene. Am. Compl. 5–6.

Plaintiffs make two 42 U.S.C. § 1983 claims in their Amended Complaint against Defendant Gomez, two such claims against Defendant Rivera, and one claim against Defendant Smith. First, Plaintiffs allege that all Defendants violated the Fourth and Fourteenth Amendments by intentionally entering Plaintiffs' home without a warrant or probable cause and under no exigent circumstances [hereinafter "Unlawful Entry Claim"]. *Id.* at 22. They further claim that Defendant Rivera's use of a taser against Mr. Salas-Sanchez was "an objectively unreasonable and excessive amount of force" in violation of the same amendments [hereinafter "Rivera Excessive Force Claim"].

6

*Id.* at 23. Finally, they claim Defendant Gomez "shot and killed [Mr. Salas-Sanchez] when [he] posed no imminent threat of serious bodily injury or death to Defendant Gomez or others" [hereinafter "Gomez Excessive Force Claim"]. *Id.* at 7. Plaintiffs argue that his use of deadly force against Mr. Salas-Sanchez was "objectively unreasonable and grossly excessive" in violation of Mr. Salas-Sanchez's rights under the Fourth and Fourteenth Amendments. *Id.* at 23.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." In determining whether a plaintiff states a valid claim, a court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that offers mere "'labels and conclusions' . . . will not do," especially when it simply tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (second alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), as revised (Mar. 31, 2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"

8

*Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citing *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 351 (5th Cir. 2012)). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *al-Kidd*, 563 U.S. at 743).

## III. ANALYSIS

### A. Unlawful Entry Claim

#### 1. Whether Plaintiffs State a Constitutional Claim

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). There exist only a "'few specifically established and well-delineated exceptions' to that general rule." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). These exceptions include the resident's consent or a combination of probable cause and exigent circumstances. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 420 (5th Cir. 2008) (citing *United States v. Gomez–Moreno*, 479 F.3d 350, 354 (5th Cir. 2007)). Exigent

circumstances include the need to "render emergency assistance to an injured occupant or protect an occupant from imminent injury" or when there are "[i]mmediate safety risks to officers." *Id.* at 421. "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

Defendant Gomez offers a one-paragraph argument in his Motion explaining the law regarding warrantless entry and why the probable-cause-plus-exigent-circumstances exception should apply in this case. Gomez Mot. 12–13. Specifically, Defendant Gomez's argument consists of a defense-friendly exposition of the facts followed by a conclusory statement that"[i]t is clear" that the Unlawful Entry Claim should be dismissed due to the presence of probable cause and exigent circumstances. *Id.* at 13. Notably, Defendant Gomez provides scant analysis of what constitutes exigent circumstances or probable cause.

Defendants Rivera and Smith offer no legal argument in their Motions regarding this issue. *See generally* Rivera Mot.; Smith Mot. Defendants Rivera and Smith appear to rest entirely on various iterations of their assertion that "there is no 'well-pleaded' factual

10

allegation that Officer Rivera *did not* have probable cause or explaining how Plaintiffs conclude exigent circumstances *did not* exist." Rivera Mot. 4 (emphasis added); Smith Mot. 4 (emphasis added). Defendant Gomez makes similar assertions. Gomez Mot. 12. These assertions evince a misunderstanding of both the Fourth Amendment and federal pleading standards.

First, the Supreme Court has deemed it "presumptively unreasonable"—and therefore a violation of the Fourth Amendment— for an officer to enter a residence uninvited and without a warrant. *See Payton*, 445 U.S. at 586. Thus, to state a plausible claim for relief, a plaintiff must plead little more than the following facts: (1) the officer entered the home; (2) there was no warrant; and (3) there was no emergency or other justification for entering the home. Plaintiffs have unquestionably pleaded those facts here. *See* Am. Compl. 4 ("Defendant Officers pushed Mrs. Sanchez out of the way and entered the home without consent and without a warrant" when there was no "indication that [Mr. Salas-Sanchez] posed a substantial risk of harm or an immediate threat to the Defendant Officers, himself, Mrs. Sanchez, or others.").

11

Second, Defendants criticize Plaintiffs for pleading only "labels and conclusions" because Plaintiffs allege that "all Defendant officers lacked probable cause . . . and no exigent circumstances existed."[2] Smith Mot. 4; Rivera Mot. 4. However, this takes Plaintiffs' statements out of context. Before making these conclusions, Plaintiffs describe numerous other allegations in order to support their conclusions. *See* Am. Compl. 3 (Mrs. Sanchez "informed [the officers] that her son was not under the influence of any illicit drugs"; "Mrs. Sanchez was cooperative in answering the officers' questions"; "[a]t no point in the conversation did the officers inform Mrs. Sanchez that they were interested in arresting or questioning [Mr. Salas-Sanchez]"; Mrs. Sanchez did not "indicate that [Mr. Salas-Sanchez]'s mental health issues posed a threat"; all of the officers knew that "Mrs. Sanchez did not believe her son posed a threat to anyone"; Mr. Salas-Sanchez "did

_____

[2] It is somewhat ironic that Defendants have morphed the *Twombly/Iqbal* standard into something of a formulaic label itself. While the Amended Complaint does not provide copious detail, it is by no means a barebones recital of the elements of an unlawful entry claim. Claiming that the Amended Complaint provides merely "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," as Defendants do, is closer to a bare legal conclusion without explanation itself than Plaintiffs' allegations. The same conclusion applies to Defendants' later contentions that Plaintiffs only plead labels and conclusions regarding the Excessive Force Claims.

not have any weapons and did not threaten the police or anyone else" ).

Thus, Defendants' accusation that Plaintiffs' statements are merely

"conclusions masquerading as facts" (Smith Mot. 3; Rivera Mot. 3) is

without merit.

Conversely, Plaintiffs proffer a convincing argument that the

warrantless entry was not justified. First, Defendants do not dispute

that they did not have consent. Second, the facts as pleaded by

Plaintiffs provide only weak support for probable cause to arrest Mr.

Salas-Sanchez for his unauthorized presence in a neighbor's home. The

officers were responding to an uncorroborated allegation by a single

individual—who did not claim to be threatened or in fear for her or her

family's safety—that Mr. Salas-Sanchez was present in her home.

Third, even if the Court assumes probable cause, there were no

exigencies present here to justify the officers' uninvited entry into

Plaintiffs' home.[3] At no point did Mrs. Sanchez, who was talking calmly

with officers on her front porch, ever indicate that she or anyone in the

house was in danger. Mr. Salas-Sanchez did not have any weapons, did

---

[3] As stated previously, Defendants need probable cause *and* exigent
circumstances to justify their warrantless entry. *See Gates*, 537 F.3d at
420.

not threaten officers, and posed no apparent threat to the infant or other occupants in the house.  Despite Defendants' characterization of Mr. Salas-Sanchez's alleged crime as a "home invasion," see, e.g., Gomez Motion 5,[4] Mr. Salas-Sanchez was only accused of committing a non-violent trespass by being present in his neighbor's residence without permission.  The commission of this alleged crime does not indicate that Mr. Salas-Sanchez posed any threat of violence to himself, his family members, or the officers.

In an attempt to justify their entry, Defendants argue that Mr. Salas-Sanchez was suffering from mental health "issues" and had been "acting strange lately." *See, e.g.,* Gomez Mot. 6.  However, it is unreasonable to deduce that an individual suffering from mental health issues and acting strangely poses an inherent threat of serious injury to his family members, especially when said family members had assured the Defendants that they did not feel that the individual posed any risk. Without knowing anything further about the nature of Mr. Salas-Sanchez's mental health issues or his strange behavior, the Court can

---

[4] Like in the Facts Section, the Court uses Defendant Gomez's Motion for citation purposes because all Defendants make near-identical arguments regarding the Unlawful Entry Claim.

just as easily infer that Mr. Salas-Sanchez had been acting unusually docile and confused rather than violent and aggressive. Thus, the fact that Mr. Salas-Sanchez was suffering from vague mental health issues lends little support to Defendants' case. Finally, Defendant Gomez highlights that there was an infant present in the house. Gomez Mot. 13. However, the mere presence of a vulnerable human being does not necessarily contribute to exigent circumstances. Rather, officers must have some suspicion that the vulnerable individual is in some imminent danger. The only imminent danger apparent from Plaintiffs' Amended Complaint came from the five rounds Defendant Gomez fired in the infant's presence.

Defendants are unable to point to facts as alleged by Plaintiffs that could lead a reasonable police officer to more than a vague, generalized suspicion that Mr. Salas-Sanchez, the officers, or the residents inside Plaintiffs' home were in danger. Thus, the Court concludes that no exigent circumstances were present here and accordingly that the Defendants' entry into Plaintiffs' home was illegal.

Although the Court rests its decision on the analysis just given, Defendants deliver additional arguments for why their entry was lawful

in their replies.  Gomez Reply 4–7; Smith Reply 5–7; Rivera Reply 5–7. In addition to the exigent circumstances doctrine, Defendants cite a Texas Court of Criminal Appeals case and claim two other doctrines (the "emergency aid" and "community caretaking" doctrines) also apply here.  Gomez Reply 5.  Defendants claim that if "Officer Gomez' entry into Plaintiffs' home could be substantiated under any of the above explained theories then there is not a constitutional violation." *Id.* at 5–6.  Defendants Rivera and Smith provide conclusory, one-sentence arguments for why each of the exceptions should apply in this case. Smith Reply 7, Rivera Reply 7.  Defendant Gomez merely recites the same facts as he did in his Motion, gives no further explanation of the law, and claims that each exception applies in this case.  Gomez Reply 6–7.

First, "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). Plaintiffs are deprived of an opportunity to respond to these arguments, and the Court lacks the legal analysis supplied by the adverse party that it usually considers in making a decision.  Second, Defendants' last-ditch, "spaghetti-on-the-wall" approach to arguing an applicable

exception is unorganized and confusing. Defendants make very little effort to clarify the contours and boundaries of these new exceptions except by indicating that they are each different and may each provide an independent basis by which the officers can avoid the warrant requirement.

However, even if Defendants had not waived these arguments, the Court does not find them compelling. Each of Defendants' replies includes long block-quotes from *Laney v. State*, 117 S.W.3d 854, 858 (Tex. Crim. App. 2003), a case that analyzes the differences between the exceptions to the warrant requirement that they hope apply here. Gomez Reply 5. *Laney* involved an officer's entry into a man's trailer after the officer had arrested the occupant for criminal mischief at a late hour. *Laney*, 117 S.W.3d at 856. While the officer was arresting the man, he saw two children aged approximately ten to twelve years old step out of the trailer, then run back inside when they made eye contact with the officer. *Id*. When the officer asked the arrestee about the children, he informed the officer that the children were not his and that he had two prior convictions for "indecency with a child." *Id*. at 857. When the officer approached the trailer, he made contact with one

of the children who told him the other child, his brother, was inside "in the back bedroom." *Id.* at 856. Considering it his duty to protect the children and find their parents, the officer then entered the trailer in search of the other boy. *Id.*

The facts in *Laney* are quite different than the facts here, and Defendants do not contend that they are analogous. Rather, Defendants bring to the Court's attention *Laney*'s attempt to clarify the contours of each different exception to the warrant requirement that potentially applied in that case. *Laney* ultimately held that the "emergency doctrine" was appropriate, and was careful to note that neither the "exigent circumstances" nor the "community caretaking doctrine" was applicable. *Id.* at 862. The court concluded that the community caretaking doctrine "deals primarily with warrantless searches and seizures of automobiles (and will be limited to those circumstances except in unusual circumstances)," and thus did not apply. *Id.* at 861. It further concluded that the exigent circumstances doctrine is limited to situations where officers are acting in their "crime-fighting role"—i.e., to further the investigation of or prevent crime. *Id.* The emergency doctrine, however, is appropriate where officers are

acting in their limited role to "protect and preserve life or avoid serious injury." *Id.*

Defendants' argument that the community caretaking exception applies here is foreclosed by the very case Defendants cite in support of this exception. *Laney* specifically states that the exception applies almost exclusively to automobile searches. *Id.* Defendants have made no effort to explain why it might be appropriate in this case involving a private residence. Further, Defendants suggest that this doctrine allows officers to enter private homes any time there is a "difficulty requiring [their] general assistance." Gomez Reply 7. A standard that only requires officers to suspect a "difficulty requiring assistance" to enter a residence without a warrant would essentially render the warrant requirement a nullity. Defendants cite no case law suggesting that such a minimal threshold exists for entering a private residence without a warrant.

Next, Defendants argue that the emergency doctrine, a separate and distinct doctrine from exigent circumstances, applies here even if the exigent circumstances doctrine does not apply. Gomez Reply 7. Assuming arguendo that the Texas Court of Criminal Appeals

accurately described the nuanced distinction between the two doctrines, the Court's analysis of the exigent circumstances doctrine, *supra*, suffices to reach the same conclusion regarding the emergency doctrine. *Laney* states that "an objective standard of reasonableness" should be used to determine "whether a warrantless search is justified under the Emergency Doctrine." 117 S.W.3d at 862. Thus, the Court must determine whether, accepting Plaintiffs' well-pleaded allegations as true, it was objectively reasonable for the Defendants to believe their entry was necessary to protect and preserve life or prevent serious injury. By the same reasoning described above, the Court concludes that it was not objectively reasonable for the Defendants to enter to protect life or prevent serious injury. The Defendants could not have reasonably been worried about their own safety or the safety of Mr. Salas-Sanchez's family when Mr. Salas-Sanchez had no weapons, no reports or known history of violence, and his mother told the officers she did not fear for anyone's safety. That Mr. Salas-Sanchez had been suffering from some unspecified mental health issues, had been acting strangely, and had recently been accused of a nonviolent property crime is insufficient to constitute exigent circumstances.

For the foregoing reasons, the Court concludes that Defendants entered Plaintiffs' home in violation of the Fourth Amendment's warrant requirement and that Plaintiffs have stated a valid constitutional claim.

2.    Whether Defendants are Entitled to Qualified Immunity

The Court must next determine whether Plaintiffs' right to exclude state officials from their home in these circumstances was "clearly established" such that a reasonable officer would have understood that the specific right at issue existed. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* To show clearly established law, plaintiffs must demonstrate "'cases of controlling authority in their jurisdiction at the time of the incident' or 'a consensus

of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Id.* at 2086 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Plaintiffs cite two cases indicating that the facts in the present case do not constitute exigent circumstances, and these cases should have provided Defendants with notice that their entry in this case was impermissible. In *Rice v. ReliaStar Life Ins. Co.*, the Fifth Circuit held that exigent circumstances obviated the need for a warrant to enter plaintiff Rice's home where the officer knew that "Rice was suicidal; Rice had a gun; and Rice had been drinking and was sitting [in his garage] in his truck holding a gun to his head." 770 F.3d 1122, 1132 (5th Cir. 2014).

In *Osborne v. Harris Cty., Tex.*, police officers responded to a report of a domestic dispute that the caller indicated "could become violent." 97 F. Supp. 3d 911, 919 (S.D. Tex. 2015). After failing to corroborate this report, the officers noticed a male individual (the plaintiff) in a nearby apartment and knocked on the door to investigate whether the apartment was the source of the disturbance. *Id.* The plaintiff stepped out of the apartment and closed the door behind him;

the officers described the plaintiff as "acting in a nervous and obviously uncomfortable manner." *Id.* When the officers indicated that they wanted to enter his apartment to ensure that no one needed help, the plaintiff protested, but the officers handcuffed him and entered his home anyway. *Id.* at 919–20. In denying summary judgment based on qualified immunity, the court held that "[t]he case law shows that at the time of the search, the right to be free from a warrantless forced entry . . . , absent exigent circumstances, was clearly established." *Id.* at 928. In concluding exigent circumstances were not present, the Court held that even though the officers were attempting to protect a potential victim of violence, the officers "had no particularized knowledge about [plaintiff], his apartment unit, or any alleged victim that could support" a conclusion that an occupant was "seriously injured or imminently threatened with such injury." *Id.* at 930.

Defendants attempt to distinguish *Osborne* on its facts. They claim that *Osborne* is different because there the officers "had not seen the [p]laintiff therein enter his home after he was identified as a culprit in a crime that had just occurred and [the officers] did not receive any information that the [p]laintiff was suffering from mental health

23

problems and had been acting strange lately." Gomez Reply 8; Smith Reply 8; Rivera Reply 8. While this is true, it misses the point. *Osborne*, *Rice*, and the precedent they rest on announce that in order to satisfy the exigent circumstances requirement when officers suspect danger, there needs to be at least some evidence of serious injury or an imminent threat of such injury in order to enter the house. *Compare Brigham City v. Stuart*, 547 U.S. 398, (2006) (finding exigent circumstances where officers observed through a window four adults struggling to restrain a juvenile who struck one of the adults in the face, drawing blood) *and Michigan v. Fisher*, 558 U.S. 45, 46 (2009) (per curiam) (finding exigent circumstances where officers were called because a man was "going crazy" in his house and where they observed "a pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, . . . three broken house windows, the glass still on the ground outside . . .[,] blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors to the house"), *with United States v. Troop*, 514 F.3d 405, 408 (5th Cir. 2008) (no exigent circumstances where officers tracked a group of illegal aliens who had been walking on foot in high heat to a house and

entered the house attempting to administer aid) *and United States v. Davis*, 290 F.3d 1239, 1240–41 (10th Cir. 2002) (no exigent circumstances where police arrived to a home on a report of a domestic disturbance, spoke with a drunk man who claimed his girlfriend was not present; the girlfriend then appeared and claimed they had been arguing and resisted her boyfriend's attempts to close the door on police, who then entered the home). In *Rice*, for instance, the officer was justified in entering the plaintiff's home to prevent serious imminent injury when he was informed plaintiff was suicidal, drunk, and was sitting in his garage with a gun to his head. *Rice*, 770 F.3d at 1132.

Here, by contrast, none of the facts indicate that a reasonable officer could have concluded exigent circumstances were present based on the established law. After reviewing numerous cases where exigent circumstances did and did not exist, it is clear that the facts in this case did not evince an exigency. As described previously, none of the Defendants had particularized knowledge, and no reasonable officer could infer from the circumstances, that any officer or member of the house was in imminent danger. According to Plaintiffs' facts, Mr.

Salas-Sanchez's mother told the officers that she did not fear for anyone's safety, and the officers knew only that Mr. Salas-Sanchez had been suffering from some unspecified mental health issues, had been acting strangely, and had recently been accused of a nonviolent property crime.

Plaintiffs have properly pleaded a claim for unconstitutional entry into their home without a warrant, and it is apparent from the pleadings that no extenuating circumstances that might justify this entry are present. Thus, the Court concludes that Plaintiffs have stated a valid claim for deprivation of constitutional rights by Defendants pursuant to § 1983 and that Defendants are not entitled to qualified immunity.

## B. Rivera Excessive Force Claim

### 1. <u>Whether Plaintiffs State a Constitutional Claim</u>

To establish that Defendant Rivera violated Mr. Salas-Sanchez's right to be free from excessive force, Plaintiffs must show the following: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively

unreasonable."[5] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). If a plaintiff can establish a violation, then courts determine whether the law was clearly established at the time of the defendant's conduct. *Id.*

### i. Whether there was an Injury

The Plaintiffs allege that the taser caused "two red abrasions . . . on [Mr. Salas-Sanchez's] right elbow." Am. Compl. 5. Defendant Rivera claims that either that the taser did not cause these injuries, or, alternatively, that they are de minimis. Rivera Mot. 5–6. First, Defendant Rivera claims that "falling, being handcuffed, medical transport, medical treatment, handling[,] or even a prior injury" could have caused the abrasions instead of the taser. Rivera Reply 9. While this may be true, Plaintiffs need only allege factual content "that allows the court to draw the reasonable inference that the defendant is liable

---

[5] The distinction between the second prong in this analysis—whether the "force was clearly excessive to the need"—and the third prong—whether it was "objectively unreasonable excessive force," is nuanced, if not unclear. After performing the respective analyses, it seems duplicative to analyze such similar, fact-intensive questions. Further, it is difficult to conceive of a set of facts where the use of force is clearly excessive, but not objectively unreasonable. The unreasonableness seems necessarily to follow the clear excessiveness. Nevertheless, the Court adheres to established precedent and will treat these issues as analytically distinct.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs allege that Defendant Rivera "deployed his taser" and that "[t]he taser connected" with Mr. Salas-Sanchez and "made contact with his skin[,]" which caused abrasions. Am Compl. 5. While it is true that these abrasions could have plausibly been inflicted by an infinite number of sources besides Defendant Rivera's taser, it is certainly plausible that the taser caused them. Thus, Defendant Rivera's argument that there are other potential explanations for the abrasions besides the taser fails.

Second, Defendant Rivera claims that even if the taser did cause the abrasions, the injury is de minimis. However, "a plaintiff need only allege 'an injury' to state a claim under the Fourth Amendment." *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004). While some injuries are so slight that they will never satisfy the injury requirement—e.g., handcuffing too tightly, see *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)—a "significant injury" is not necessary, and psychological injuries alone are sufficient to state a claim. *Flores*, 381 F.3d at 400.

Being shot with metal barbs that are supposed to emit a paralyzing jolt of electricity to their subject does not strike the Court as a de minimis injury, even if Plaintiffs do not allege that the barbs emitted any electricity as they normally do. *See Bryan v. MacPherson*, 630 F.3d 805, 813 (9th Cir. 2010) ("[T]he fact that puncture wounds through the skin are classified as 'superficial' rather than as 'serious' or 'life-threatening' does not mean that such wounds are *insignificant*."). This is especially true considering that taser subjects sometimes require medical attention to remove the metal barbs. *See, e.g., Newman v. Guedry*, 703 F.3d 757, 760 (5th Cir. 2012) (describing how the plaintiff "waited . . . for emergency medical personnel to remove the taser barbs"); *Bryan*, 630 F.3d at 813–14 (describing how the plaintiff required "emergency surgery to have the dart removed"). Further, the specific physical manifestation of the injury here (two abrasions) should not be removed from the context in which it was inflicted. The alleged cause of the injury is a critical component of the inquiry because "[w]hether an injury is cognizable and whether the use of force is objectively reasonable are inextricably linked questions." *Flores*, 381 F.3d at 398 n.6. Thus, "[t]he definition of a cognizable

injury . . . changes with the facts of each case." *Id.* Accordingly, the excessiveness and unreasonableness of the use of force (analyzed below) support the conclusion that Mr. Salas-Sanchez did indeed suffer a cognizable injury.

ii. *Whether the Use of Force was Clearly Excessive to the Need*

Here, Plaintiffs allege that Defendant Rivera impermissibly entered their home accompanied by two other officers and employed a taser on an unarmed suspect who had not exhibited any signs of physical aggression towards the officers and who had received no verbal commands prior to the use of the taser. Defendant Rivera's account of this incident differs markedly. Defendant Rivera claims that he entered the house permissibly only after Mr. Salas-Sanchez made repeated verbal threats to him and only fired the taser after giving verbal commands to Mr. Salas-Sanchez to drop an unidentified object in his hand. Rivera Mot. 2.

These stories are irreconcilably at odds with each other. However, at this stage the Court is not tasked with resolving factual disputes or determining the accurate sequence of events as they occurred. Rather, courts must "accept all well-pleaded facts as true and view those facts

in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Doing so here, the Court concludes that Defendant Rivera's use of his taser was clearly excessive to whatever unclear purpose he had when he used it.  According to Plaintiffs, there were three officers against one unarmed suspect, the suspect had not exhibited any signs of aggression towards the officers besides telling them to leave his home, the officers did not announce that the suspect was under arrest or why they were pursuing him, and the suspect was moving away from the officers when Defendant Rivera used the taser. While tasers can be useful, constitutional methods of law enforcement, officers should only use them after first employing "measured and ascending" tactics to combat a suspect's "escalating . . . resistance." *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that the use of a taser was constitutional where the arrestee failed to acquiesce to repeated verbal commands and where resistance was "immediate and persistent").  Here, Plaintiffs allege that Defendant Rivera drew the taser "[i]mmediately upon entering the home," not as a measured response to persistent disobedience.  Am. Compl. 5. Whatever Defendant Rivera was attempting to accomplish—whether it

31

was protect others in the house, de-escalate a tense situation, or arrest Mr. Salas-Sanchez—the almost immediate use of a taser was excessive in relation to accomplishing that goal. Therefore, the Court concludes that the use of force in this case was clearly excessive to the need for force.

### iii. Whether the Excessiveness was Objectively Unreasonable

The next question is whether the excessiveness is objectively unreasonable. Reasonableness is measured "in objective terms by examining the totality of the circumstances." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 844 (5th Cir. 2009) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). "Whether the force was reasonable under the Fourth Amendment is determined from the perspective of a reasonable officer on the scene, rather than with 'the 20/20 vision of hindsight.'" *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). In determining whether a use of force was unreasonable, courts must carefully consider the facts and circumstances of each case including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers and others," and (3)

32

"whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).

After considering the three *Graham* factors, the Court concludes that Defendant Rivera's use of force was objectively unreasonable. First, the officers were responding to an alleged home invasion resulting in no stolen property and no injuries. Plaintiffs allege that Ms. Romero, who had made the 911 call, knew Mr. Salas-Sanchez, did not wish to pursue any legal action against him, and never informed the officers that Mr. Salas-Sanchez was a threat to her or her family. Am. Compl. 2–3. Certainly, burglary is a serious allegation. *Cf. Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (holding that driving twenty miles per hour below the speed limit and failing to produce proof of insurance were not severe violations). However, no burglary was in progress when the Defendants arrived and Plaintiffs allege that the Defendants were made aware that the suspect's presence in Ms. Romero's house may have been due to mental health issues rather than a desire to commit a crime. The fact that an alleged burglary sparked this incident does not make the Defendant's action any more reasonable.

Second, Plaintiffs allege that Mr. Salas-Sanchez did not pose a threat to the Defendants or anyone around him. While he was demanding that the Defendants leave the house, the Defendants were aware that he was suffering from mental health issues and that his mother did not believe he posed any threat. Further, Plaintiffs allege Mr. Salas-Sanchez never threatened the Defendants or anyone in the Salas-Sanchez residence. Mr. Salas-Sanchez's mother was presumably aware of her daughter and infant grandchild's presence in the house and still did not alert the Defendants to any danger. Once the Defendants entered the house, where they outnumbered Mr. Salas-Sanchez three-to-one, Mr. Salas-Sanchez backed away from them, never made any threatening gestures, and did not possess any weapons. Finally, while a suspect's physical size may not always be an accurate indicator of the threat he or she poses, it is certainly relevant that Mr. Salas-Sanchez stood at five-feet-seven-inches tall and weighed 117 pounds. The Court agrees, based on Plaintiffs' allegations, that Mr. Salas-Sanchez did not pose an immediate threat to the safety of the Defendants or others around him.

Finally, Mr. Salas-Sanchez was not actively resisting or trying to evade arrest. Importantly, neither Defendant Rivera nor any other officer present ever told Plaintiffs or Mr. Salas-Sanchez that anyone was under arrest at any point. None of the Defendants ever made or attempted to make physical contact with Mr. Salas-Sanchez until he had been shot by both a taser and firearm. Thus, the three *Graham* factors indicate that Officer Rivera's use of his taser was unreasonable.

Defendant Rivera resists this conclusion by arguing that Plaintiffs' facts are actually "conclusory allegations masquerading as facts." Rivera Mot. 7. This is partly because Plaintiffs make multiple statements claiming that the use of the taser was, among other things, "not necessary" and "objectively unreasonable and grossly excessive." *Id.* at 6. Again, Defendant Rivera takes Plaintiffs' statements out of context. Plaintiffs' allegations are impermissible legal conclusions only if they are removed from their factual support. In Plaintiffs' Amended Complaint itself, however, those statements are preceded by sufficient factual support. *See* Am. Compl. 4–5 (The Defendants "did not inform Mrs. Sanchez or [Mr. Salas-Sanchez] about why they were entering the home"; the Defendants "did not announce their intention to detain [Mr.

Salas-Sanchez]"; Mr. Salas-Sanchez "had no weapon and did not make any aggressive movements towards the officers or anyone else"; Mr. Salas-Sanchez "was not engaged in any conduct in violation of the law and did not demonstrate any intent to engage in behavior in violation of the law"; "There were sufficient lighting conditions in the home for Defendant Officers to observe [Mr. Salas-Sanchez's] movements"; once they were inside the home, Mr. Salas-Sanchez "moved away from the officers"). Thus, the Court concludes Plaintiffs have complied with federal pleading standards.

For the foregoing reasons, the Court concludes that Defendant's actions were objectively unreasonable under the circumstances. No reasonable officer would have shot an unarmed, 117-pound man suffering from mental health issues with a taser prior to attempting some other form of de-escalation when the man was not under arrest and two other officers were present.

> 2. Whether Defendant Rivera is Entitled to Qualified Immunity

Based on the previous analysis, the Court determines that Plaintiffs have pleaded sufficient facts to state a claim that Defendant Rivera violated Mr. Salas-Sanchez's constitutional rights by using

excessive force. In order to overcome Defendant Rivera's qualified immunity defense, Plaintiffs must establish that the right at issue was clearly established. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), as revised (Mar. 31, 2017). As the Supreme Court has explained, "qualified immunity is lost when plaintiffs point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011).

Plaintiffs cite at least three relevant cases that indicate that the law on this issue was indeed clearly established at the time Defendant Rivera used his taser on Mr. Salas-Sanchez. These cases are sufficiently analogous to put law enforcement officials on notice that tasing mentally ill suspects without warning is unconstitutional when the suspect is not exhibiting threatening or uncooperative behavior. *See Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (upholding denial of summary judgment where an officer used a taser on a person who was not suspected of a crime, was not resisting arrest, and had already been

struck thirteen times with a baton); *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 856–57 (S.D. Tex. 2014).

In *Ramirez*, police arrived at the plaintiff's landscaping business to execute an arrest warrant on a member of the plaintiff's family. *Ramirez*, 716 F.3d at 372. When the plaintiff arrived on the scene, he observed the officers with weapons drawn pointing them at his unarmed, kneeling employees. *Id.* Upon asking sheriff's deputy Martinez why the officers were present, the two engaged in a verbal altercation and Martinez ordered the plaintiff to "turn around and put your hands behind your back!" *Id.* When the plaintiff did not comply, Martinez attempted to grab his arm but the plaintiff pulled away. *Id.* Martinez then immediately tased the plaintiff in the chest. *Id.* When other officers subsequently forced the plaintiff to the ground, Martinez tased the plaintiff again in the back. *Id. at 373.* In upholding denial of summary judgment, the court specifically held that the use of the taser was unreasonable in this instance despite the fact that the plaintiff disobeyed a verbal command, was charged with disorderly conduct, and pulled away from the officer when he attempted to grab him. *Id.* at 377–78.

In *Khansari*, the district court denied an officers' motion to dismiss where the officer employed a taser in circumstances similar to those in this case. *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 856–57 (S.D. Tex. 2014). There, a nineteen-year-old's mother called an ambulance to their home because her mentally ill son had taken a large dose of unknown medication. *Id.* at 850. After an ambulance arrived at the residence and the young man had refused to go to the hospital, a police officer arrived and stepped out of the car holding a rifle. *Id.* Other officers then arrived at the scene and also drew their firearms. *Id.* As tensions began to escalate and the young man's parents objected to the show of force, the young man pushed his parents out of the line of fire. *Id.* Upon doing so, an officer immediately deployed a taser on the young man, which struck him in the face. *Id.* The officers then shot the young man with tasers two more times when he tried to stand back up and run back in his house. *Id.* The *Khansari* court denied the officers' motions to dismiss because

> without attempting to use physical skill, negotiation, or even commands, the officers immediately deployed their tasers . . . [on a] mentally ill or emotionally disturbed young man who had refused medical services but was not suspected

of having committed any crime,[6] was not armed, and did not pose an immediate threat to the officers or to others.

*Id.* at 856 (footnote not in original).

These two cases clearly establish that the use of a taser in the present circumstances was unreasonable.

Finally, "'in an obvious case,' the *Graham* excessive-force factors themselves can 'clearly establish' the answer, even without a body of relevant case law." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Thus, courts use the *Graham* factors in addition to analogous case law if it exists to analyze whether use of force in a given case was unconstitutional pursuant to clearly established law. *Khansari*, 14 F. Supp. 3d at 860. In determining whether Plaintiffs stated a claim, the Court already held that the *Graham* factors strongly suggest that the

---

[6] *Khansari* is distinguishable from the present case in one sense because the plaintiff there was not suspected of committing a crime, as Mr. Salas-Sanchez was here. However, *Khansari* still should have put officers on notice that deploying a taser in substantially similar circumstances was illegal. As the Court has noted repeatedly, Mr. Salas-Sanchez was only accused of a nonviolent property crime. Ultimately, *Khansari* demonstrates that immediately deploying a taser on a mentally ill young man who was not under arrest, not armed, and did not pose any threat to the officers is unreasonable. This is true regardless of whether the young man is suspected of a nonviolent crime.

conduct alleged here was unreasonable. In addition to the analogous case law, the Court's analysis of the *Graham* factors provides further support for the conclusion that Defendant's use of the taser was objectively unreasonable in light of clearly established law when the incident occurred. *See Khansari*, 14 F. Supp. 3d at 860 (collecting cases involving the unlawful use of tasers where the *Graham* factors were not satisfied).

Accordingly, the Court concludes that Plaintiffs have stated a valid claim for deprivation of constitutional rights by Defendant Rivera pursuant to § 1983 and that Defendant Rivera is not entitled to qualified immunity.

## C.   Gomez Excessive Force Claim

### 1.   Whether Plaintiffs State a Constitutional Claim

To establish that Defendant Gomez violated Mr. Salas-Sanchez's right to be free from excessive force, Plaintiffs "must first show that [Mr. Salas-Sanchez] was seized." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Next, they must show the following: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively

unreasonable." *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013)

(quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).

### i. Seizure and Whether there was an Injury

Plaintiffs indicate and the Court agrees that "[Defendant Gomez]

does not dispute that [Mr. Salas-Sanchez] was seized by [Defendant

Gomez]'s gunshots[.]" Gomez Resp. 9. Therefore, the Court concludes

that this requirement for alleging excessive force is satisfied. Similarly,

Defendant Gomez does not appear to dispute that Mr. Salas Sanchez

"suffered a cognizable injury – death – that was caused by the use of

force." *Id.* Therefore, the Court concludes that Plaintiffs have satisfied

this requirement for alleging excessive force as well.

### ii. Whether the Use of Force was Clearly Excessive to the Need

Accepting Plaintiffs' allegations as true, the Court concludes it is

clear that shooting Mr. Salas-Sanchez was excessive to any need

Defendant Gomez had to restrain or detain him. Defendant

outnumbered the unarmed, 117-pound Mr. Salas-Sanchez three-to-one.

Mr. Salas-Sanchez did not threaten Defendant Gomez or make any

threatening movements toward him. At the moment Defendant Gomez

shot Mr. Salas-Sanchez, he had his back turned. No weapons or

threatening objects were ever recovered at the scene. The Court has little trouble in concluding that firing five rounds at Mr. Salas-Sanchez was excessive to the vague need for self-defense that Defendant Gomez alleges, which directly conflicts with Plaintiffs' account of the events.

Defendant Gomez does not seem to contest that the facts, as alleged, constitute excessive force. In fact, Defendant Gomez admits that "[t]he allegations certainly meet the standard of clearly excessive force that was clearly unreasonable." Gomez Reply 10. However, Defendant Gomez argues persistently throughout his motion and reply that Plaintiffs "have only plead a fantasy account amounting to labels and conclusions" that are "clearly not plausible." Gomez Mot. 9, 11. Defendant Gomez thus contends that Plaintiffs have failed to state a claim under the *Twombly/Iqbal* standard because their version of the facts is not plausible. *Id.* at 9. Defendant Gomez encourages the Court to essentially disregard Plaintiffs' facts because they are so completely unbelievable and, after doing so, Defendant Gomez assures the Court that it will become clear that Defendant Gomez's conduct was neither excessive nor unreasonable. *Id.* at 11. Defendant Gomez uses the following logic to suggest that Plaintiffs' facts are *a priori* implausible:

- Ms. Romero (Mr. Salas-Sanchez's neighbor) "called police and directed them to the Decedent's home, thus showing she was in fact threatened." Gomez Mot. 5. Therefore, it is implausible that she did not inform officers that she or her family felt threatened. Gomez Mot. 7.

- Ms. Romero "directed [Defendants] to the Decedent's home," therefore she must have wanted to pursue legal action, and it is implausible that she told the officers she did not. Gomez Mot. 5, 7.

- "It is not plausible that the Decedent was not a threat to himself or others since he had just committed a home invasion." Gomez Mot. 8.

- "It is not plausible that a mentally unstable young man was only telling the officers to leave his mother's house," the only plausible inference is that he was "threatening the officers that he would hurt them if they did not leave[.]" Gomez Mot. 8.

- "It is not plausible that [Defendant Gomez] shot an unarmed man in the back as he ran away" because the State only charged him criminally "with manslaughter," and "such actions would clearly constitute intentional murder[.]" Gomez Mot. 8. "No officer would do such things and not be indicted for intentionally killing another human being without justification." Gomez Reply 10.

- "[S]omething clearly forced the Officer Gomez to believe he was in such danger as to require that he discharge his firearm," therefore Plaintiffs' contention that he did not have reasonable fear of imminent harm is implausible. Gomez Mot. 11.

These attempts to undermine Plaintiffs' allegations are misplaced. The Court is not the finder of fact at this stage in the litigation. Aside from qualified immunity, it must only decide the threshold issue of whether Plaintiffs have described a factually plausible set of circumstances that leads to Defendant's liability. It is not for the Court to decide whose version of the facts it believes is closer to the truth. Further, the Amended Complaint does not provide an "implausible" series of events, as Defendant Gomez suggests. At its core, Plaintiffs' claim is that Defendant Gomez and two other officers rushed into a mentally ill suspect's parents' home and shot him in the back while he was unarmed. While the allegations are shocking and distressing, they are not so implausible that they warrant dismissal before Plaintiffs have the opportunity to conduct discovery and investigate their claims more fully.

Further, Defendant Gomez's attempts to show that Plaintiffs' allegations are contradictory and implausible are not based on sound reasoning. For example, Defendant Gomez contends that Ms. Romero must have felt threatened for her and her family's safety and informed police of this fear because she called 911 and identified Mr. Salas-

Sanchez to them. Gomez Mot. 7. While feeling threatened is certainly one plausible explanation for her call to police and subsequent identification of Mr. Salas-Sanchez, that is not the only plausible reason she would have called. It seems equally plausible that she called the police before she realized who exactly had been in the house. Ms. Romero could have heard a noise and called the police before realizing a familiar, mentally ill neighbor was present in the house rather than a burglar with criminal intentions. Even if she had identified Mr. Salas-Sanchez before calling the police, she could have called the police out of shock before later recognizing that her neighbor meant no harm and was merely confused or exhibiting symptoms of mental illness. Ms. Romero's call to the police does not, as Defendant Gomez contends, lead to the sole plausible inference that she felt threatened for her safety and thus that Mr. Salas-Sanchez was a dangerous criminal who needed to be apprehended.

Perhaps the most flawed of Defendant Gomez's contentions is that because he was only charged with manslaughter (and not murder) in a parallel state criminal case, it is not plausible that Defendant Gomez shot an unarmed man in the back when he did not pose a threat to the

officer. Gomez Reply 10. It would be seriously misguided for the Court to rely on a State district attorney's discretionary charging decision to make factual inferences about a civil defendant's actions. Among many other reasons, this logic is flawed because the burden of proof in a civil case is much lower than in a criminal case. A State prosecutor's discretionary decision to charge Defendant Gomez with a lesser crime in State court can be explained by the government's higher burden of proof in criminal cases, not by the necessary implication that Defendant Gomez committed the charged crime and the charged crime only. Here, Plaintiffs' burden of proof is arguably the lowest burden at any point in any civil or criminal legal proceeding. Thus, the absence of criminal charges for the conduct alleged has zero weight in assessing the plausibility of Plaintiffs' allegations.

Defendant Gomez's remaining factual implausibility arguments are all similarly unconvincing.[7] Accordingly, the Court concludes that

---

[7] The Court has discerned the following additional arguments that Plaintiffs' facts are implausible: (1) it is not plausible that Mr. Salas-Sanchez was *not* a threat because he had just committed a home invasion; (2) it is not plausible that Mr. Salas-Sanchez was *not* threatening officers when they were at his home speaking to his mother; (3) it is not plausible that Defendant Gomez was *not* in danger because there must have been some reason to use his firearm; (4) it is

Plaintiffs' facts are sufficiently plausible to pass *Twombly/Iqbal* muster, and that the force was clearly excessive to the need.

### iii. Whether the Excessiveness was Objectively Unreasonable

The next question is whether the excessiveness is clearly unreasonable. The Court applies the same standard for judging reasonableness to Defendant Gomez that it applied to Defendant Rivera, *supra*. The Court must look to (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers and others," and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).

Here, again, Defendant Gomez does not contest that the Plaintiffs' facts constitute an unreasonable use of force. *See* Gomez Reply 10 ("The allegations certainly meet the standard of . . . clearly unreasonable [force]."). Rather, Defendant Gomez chooses to assail the plausibility of

---

not plausible that an officer tased Mr. Salas-Sanchez if Mr. Salas-Sanchez posed no threat, Gomez Motion 8; (5) it is not plausible that Defendant Gomez shot an unarmed man in the back, but it is plausible that Defendant Gomez shot Mr. Salas-Sanchez "as the Decedent attacked him and the Decedent turned his body as [Defendant Gomez] fired his gun." *Id.*

Plaintiffs' facts. However, the Court has already determined that the facts as alleged are plausible. Accordingly, the Court will analyze the *Graham* factors to determine whether Plaintiffs state a claim of unreasonable force.

As with Defendant Rivera, a consideration of the three *Graham* factors weighs heavily against the reasonableness of Defendant Gomez's use of force. Although Defendant Gomez used a firearm rather than a taser, the Court's analysis of these factors applies equally to Defendant Gomez: (1) the crime at issue was not particularly severe; (2) the suspect did not pose an immediate threat to the safety of Defendant Gomez or the other officers; and (3) the suspect was not actively resisting arrest or attempting to evade it by flight. The Court has little trouble in concluding that shooting an outnumbered, mentally-ill, 117-pound young man in the back when the young man posed no danger to any of the people present in Plaintiffs' residence was objectively unreasonable.

For the foregoing reasons, the Court concludes that Defendant Gomez's actions constitute excessive force that was objectively unreasonable under the circumstances.

## 2. Whether Defendant is Entitled to Qualified Immunity

Based on the previous analysis, the Court determines that Plaintiffs have pleaded sufficient facts to state a claim that Defendant Gomez violated Mr. Salas-Sanchez's constitutional rights by using excessive force. In order to overcome Defendant Gomez's qualified immunity, Plaintiffs must establish that the right at issue was clearly established. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), as revised (Mar. 31, 2017). Defendant Gomez does not describe or attempt to draw parallels to any other cases that indicate the circumstances here warrant qualified immunity. Instead, Defendant Gomez reiterates the argument that Plaintiffs' alleged facts "are so clearly not plausible that the Plaintiffs cannot overcome [Defendant Gomez's] entitlement to qualified immunity." Gomez Mot. 9. However, the Court has already determined that Plaintiffs have pleaded sufficient facts to state a claim for excessive force. The current inquiry is a legal one to determine whether a reasonable officer would have known the contours of the right at issue at the time of the violation such that he was on notice that the alleged action constituted excessive force.

Plaintiffs cite multiple relevant cases that indicate that the law on this issue was indeed clearly established at the time Defendant Gomez shot Mr. Salas-Sanchez. *See Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) ("It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others."); *Graves v. Zachary*, 277 F. App'x 344, 347 (5th Cir. 2008) (denying qualified immunity for an officer who shot the plaintiff even though the plaintiff was holding a gun, explaining that "it is objectively unreasonable to use deadly force unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others") (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)); *Mason v. Faul*, No. 6:12-CV-2939, 2017 WL 2656191, at *4 (W.D. La. May 2, 2017), report and recommendation adopted sub nom. *Mason v. LaFayette*, No. CV 12-02939, 2017 WL 2625398 (W.D. La. June 15, 2017) (denying qualified immunity where an officer shot the plaintiff in locations on his body that indicated that the plaintiff was not threatening the officer).

Accordingly, the Court concludes that Plaintiffs have stated a valid claim for deprivation of constitutional rights by Defendant Gomez pursuant to § 1983 and that Defendant Gomez is not entitled to qualified immunity.

## IV. CONCLUSION

Given the foregoing analysis, the Court concludes that Defendants Gomez's, Rivera's, and Smith's motions should be denied as to both the Excessive Force and Unlawful Entry Claims.

Accordingly, **IT IS ORDERED** that Defendant Kenneth Mando Gomez's "First Amended Motion to Dismiss" (ECF No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Alberto Rivera's "Rule 12(b) Motion to Dismiss" (ECF No. 20) is **DENIED.**

**IT IS FURTHER ORDERED** Defendant Pamela Smith's "Rule 12(b) Motion to Dismiss" (ECF No. 19) is **DENIED.**

SIGNED this _1st_ day of September, 2017.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE