## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| CELIA SANCHEZ and | § | |
| OSCAR SALAS, statutory | § | |
| death beneficiaries of | § | |
| ERIK EMMANUEL SALAS- | § | |
| SANCHEZ, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | EP-17-CV-133-PRM |
| | § | |
| MANDO KENNETH | § | |
| GOMEZ and the CITY OF | § | |
| EL PASO, TEXAS, | § | |
|     Defendants. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE EXPERT TESTIMONY OF W. KEN KATSARIS

On this day, the Court considered the following filings in the above captioned cause:

- Defendant City of El Paso, Texas's [hereinafter "Defendant City of El Paso"] "Motion to Exclude or Limit Opinions of W. Ken Katsaris" (ECF No. 229) [hereinafter "Defendant City of El Paso Motion"], filed on January 2, 2020;

- Defendant Officer Mando Kenneth Gomez's [hereinafter "Defendant Officer Gomez"], of the El Paso Police Department [hereinafter "EPPD"], "Motion to Exclude the Expert Testimony of W. Ken Katsaris" (ECF No. 231) [hereinafter "Defendant Officer Gomez Motion"], filed on January 2, 2020;

- Plaintiffs Celia Sanchez and Oscar Salas's [hereinafter "Plaintiffs"] "Response to Defendants' Motions to Exclude or Limit Opinions of W. Ken Katsaris" (ECF No. 252) [hereinafter "Response"], filed on February 18, 2020;

- Defendant City of El Paso's "Reply to Plaintiffs' Response to Motion to Exclude or Limit Opinions of W. Ken Katsaris" (ECF No. 256) [hereinafter "Defendant City of El Paso's Reply"], filed on February 25, 2020; and

- Defendant Officer Gomez's "Reply in Support of His Motion to Exclude the Expert Testimony of W. Ken Katsaris" (ECF No. 259) [hereinafter "Defendant Officer Gomez's Reply], filed on February 26, 2020.

Therein, the parties dispute Plaintiffs' expert witness W. Ken Katsaris's [hereinafter "Mr. Katsaris"] qualifications to testify as an expert in this case, and the admissible scope of his testimony should the Court determine that he is qualified to testify as an expert. Accordingly, Defendants request that the Court exclude all or portions of Mr. Katsaris's testimony pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) (governing admissibility of expert witness testimony).  After due consideration, the Court is of the opinion that Defendant City of El Paso's and Defendant Officer Gomez's Motions should be granted in part and denied in part for the reasons stated herein.

2

## I.   FACTUAL AND PROCEDURAL BACKGROUND

As a threshold matter, today's Memorandum Opinion and Order incorporates all facts as presented in prior orders in this case.

Additionally, the Court is mindful that Defendants' Motions reiterate many of the legal arguments presented at summary judgment. Mem. Op. & Order Granting in Part and Den. in Part Def. City of El Paso, Texas' Mot. for Summ. J. [hereinafter "Defendant City of El Paso Summary Judgment Order"], Mar. 3, 2020, ECF No. 264; Mem. Op. & Order [hereinafter "Defendant Officer Gomez Summary Judgment Order"], July 24, 2019, ECF No. 189.  Much of what has been requested has been urged, considered, and ruled upon.  The Court has no intention of superceding a prior ruling.  Furthermore, for purposes of allowing expert testimony, the Court shall decline from publishing an extensive order on the myriad issues contained in Defendants' Motions, many of which the Court anticipates shall be raised again at trial.

On December 14, 2018, Plaintiffs designated Mr. Katsaris as a retained expert witness in support of their claims against both Defendant Officer Gomez and Defendant City of El Paso.  Pls.'s Expert Designations 1–2, Dec. 14, 2018, ECF No. 105.  Plaintiffs also

3

designated Mr. Katsaris as a rebuttal witness to three of Defendants'
expert witnesses.  Pls.'s Designation of Rebuttal Experts, Jan. 29, 2019,
ECF No. 117.  Defendants deposed Mr. Katsaris on October 21, 2019.
Def. City of El Paso Mot. 2; *see also id.* Ex. 1 [hereinafter "Deposition
Transcript"], ECF No. 229-1 (transcript of Mr. Katsaris's deposition,
totaling 217 pages of testimony).  Mr. Katsaris has provided a
curriculum vitae, *id.* Ex. 2 [hereinafter "curriculum vitae"], at 22–51,
ECF No. 229-2; a report and opinion on his conclusions, *id.* Ex. 3
[hereinafter "Expert Report"], at 1–55, ECF No. 229-3; and a sworn
statement in support of Plaintiffs' position at the summary judgment
phase of these proceedings, *id.* Ex. 3, at 56–74.

In its Motion, Defendant City of El Paso seeks exclusion of the
following testimony for the following reasons:

1.  Mr. Katsaris's opinions regarding a pattern or practice of
    inadequate training; inadequate supervision/discipline;
    inadequate investigation; or excessive force (i.e. the
    *Monell*[1] issues) are unreliable, unduly and unfairly
    prejudicial; speculative and inadmissible;

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (setting the
standard for determining whether a municipality may be held liable for
a constitutional injury).

2. Mr. Katsaris's opinions that the officers improperly entered the home are inadmissible because they are unreliable; irrelevant, prejudicial and/or contain impermissible legal conclusions;

3. Mr. Katsaris's opinions on the [state] of mind/intent of individuals to form opinions regarding the reasonableness of officers' actions, including but not limited to entry of the home are inadmissible because he is not qualified to render such opinions and they are unreliable, speculative, conclusory and unduly prejudicial;

4. Mr. Katsaris's opinions on the credibility of the . . . officers and their version of events; observations and conclusions are unfounded, irrelevant, unreliable and unreasonably prejudicial; and

5. Mr. Katsaris's opinions regarding blood splatter analysis and bio-mechanics are inadmissible[,] are unreliable and he lacks the proper qualifications and expertise to offer such opinions.

Def. City of El Paso Mot. 2.  Generally, these requests concern  Federal Rules of Evidence 702, 704, 401, & 403.

Defendant Officer Gomez provides similar requests to exclude testimony as it pertains to his individual liability:

1. Mr. Katsaris's opinions as they relate to blood splatter analysis and biomechanics;

2. Mr. Katsaris's opinions as they relate to the legality of the Officers' warrantless entry into [the Salas-Sanchez] home;

    3. Mr. Katsaris's opinions as they relate to whether all events after the warrantless entry are unlawful or improper; and

    4. Mr. Katsaris's opinions as they relate to anyone's state of mind during the events giving rise to the present lawsuit.

Defendant Officer Gomez Mot. 3.  Likewise, these requests concern Federal Rules of Evidence 702, 704, & 403.

Notably, neither defendant identifies with specificity the supporting documents or deposition testimony that reflect the exact portions of Mr. Katsaris's opinion that the Court should consider excluding.  *See* Resp. 1 ("The sheer breadth of pages cited make it difficult to parse out the specific opinions Defendants seek to exclude."). Additionally, Plaintiffs declined to file their own *Daubert* motions, "anticipating that objectionable testimony or documentary evidence would be raised at the pre-trial stage in Plaintiffs' *motion in limine*." Resp. 2.  While Plaintiffs' strategic decision is in no way a defense to the instant motions, it draws attention to the fact that Defendant City of El Paso urged near-identical requests in its subsequent motions in limine. *See* Def. City of El Paso's Mots. in Lim. ¶¶ 47–49.  Furthermore, recognizing the similar topics to be presented by Defendants' own

experts, Plaintiffs request that should the Court exclude "categories of expert testimony," such exclusions should "apply with equal force to all parties' designated and non-designated experts."  Resp. 3.

Accordingly, Defendants *Daubert* motions are not easily determined in a vacuum.  When considered in the larger context of this case, Defendants' arguments concern both the narrow question of Mr. Katsaris's qualifications and the broad question of which expert opinions are admissible generally.  Therefore, the Court shall limit today's Memorandum Opinion and Order to Mr. Katsaris's qualifications as an expert and address the broader issues of admissibility as they arise during pre-trial conferences and the trial itself.  All determinations will apply with equal force when similarities between expert witnesses and their proffered opinions are apparent.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion."  Fed. R. Evid. 702.  Before allowing an

expert to testify, a court must find that the following criteria have been

met:

> (a) the expert's scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand the
> evidence or to determine a fact in issue; (b) the testimony is
> based upon sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d) the
> expert has reliably applied the principles and methods to the
> facts of the case.

*Id.*

The district court must make a preliminary inquiry into whether

proposed expert testimony is relevant and reliable. *Vargas v. Lee*,

317 F.3d 498, 500 (5th Cir. 2003) (citations omitted).  In doing so, the

district court acts as a "gate-keeper" of expert witness testimony, and

this "gate-keeping obligation applies to all types of expert testimony."

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citation

omitted).

## A.     Experts Must Be Qualified

Rule 702 provides that a witness may offer "an expert opinion only

if he or she draws on some special 'knowledge, skill, experience,

training, or education' to formulate that opinion." *Wilson v. Woods*, 163

F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702).  The basis of an

expert's specialized knowledge may come from a variety of sources, including academic training and credentials or practical experience. *S. Cement Co. v. Sproul*, 378 F.2d 48, 49 (5th Cir. 1967).

### B.     Expert Testimony Must Be Relevant

Additionally, pursuant to Rule 702, expert testimony must "assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702; *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir. 2003).  Relevant evidence is evidence "which has 'any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (quoting Fed. R. Evid. 401).  To be relevant, expert testimony must use "reasoning or methodology [that] properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quotation omitted).

## C.    Expert Testimony Must Be Reliable

The reliability requirements of Rule 702 reflect the considerations set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *Daubert* provides the "analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone,* 288 F.3d at 243.  The *Daubert* analysis must consider "whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592–93).

To guide this inquiry into reliability, the *Daubert* Court set forth a non-exhaustive list of factors that the district court should consider in connection with proposed expert testimony.  This includes "whether the expert's theory or technique:  (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Pipitone*, 288 F.3d at 244 (citing *Dauber*t, 509 U.S. at 593–94).  The *Daubert* analysis is "flexible," and the factors set forth in *Daubert* "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."

10

*Kumho Tire, Inc. v. Carmichael*, 526 U.S. 137, 150 (1999) (citation omitted).  Although the proponent of expert testimony need not show that the expert's conclusions are correct, he must show, by a preponderance of the evidence, that the proposed testimony is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

"The *Daubert* analysis should not supplant trial on the merits." *Mathis*, 302 F.3d at 461 (citing *Pipitone*, 288 F.3d at 250).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.* at 461 (citing *Daubert*, 509 U.S. at 596).  Nevertheless, district courts have wide discretion in determining the admissibility of expert testimony.  *Gen. Electric v. Joiner*, 522 U.S. 136, 139 (1997); *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000)).

## D.    Experts May Not Provide Legal Conclusions

Federal Rule of Evidence 704(a) instructs that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Rather, Rule 704(a) "does not allow a witness to give legal conclusions."  *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United*

11

States v. Izydore, 167 F.3d 213, 218 (5th Cir. 1999)).  Therefore, "while

witnesses may testify in the form of an opinion or inference that

'embraces an ultimate issue to be decided by the trier of fact,'" such

testimony may not "tell the jury what result to reach."  *Sophin v. United*

*States*, 153 F.Supp.3d 956, 965 n.6 (W.D. Tex. 2015) (quoting *Williams*,

343 F.3d at 435; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.

1983)).

### E.   Expert Testimony May Be Excluded If Its Probative Value Is Substantially Outweighed By Its Prejudicial Effect

Pursuant to Federal Rule of Evidence 403, a court may exclude

otherwise admissible relevant evidence "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or

needlessly cumulative evidence."  "Relevant evidence is inherently

prejudicial; but it is only unfair prejudice, substantially outweighing

probative value, which permits exclusion of relevant matter under Rule

403."  *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005)

(internal quotation marks omitted).  Furthermore, "[t]he application of

Rule 403 must be cautious and sparing."  *United States v. Fields*,

483 F.3d 313, 354 (5th Cir. 2007).  "Rule 403 is not designed to 'even

out' the weight of the evidence."  *Baker v. Canadian Nat'l/Ill. Cent.*

*R.R.*, 536 F.3d 357, 369 (5th Cir. 2008).

## III.   ANALYSIS

The following analysis concerns to what extent Mr. Katsaris may

give qualified, reliable, and admissible testimony.  In general, Mr.

Katsaris is an expert qualified to give reliable evidence that is relevant

to this case, the scope of which will be determined as the case

progresses.  In addition, the Court will consider each of the defendants'

challenges in turn, combining Defendants' respective arguments when

overlap exists.  Ultimately, the Court determines that Mr. Katsaris may

provide expert testimony in this case, to be limited in substance by the

rights and privileges afforded to each party pursuant to the rules and

laws of this Court and the United States.  Such limitations shall be

determined over the course of trial.

### A.   General Qualifications

Having reviewed the supporting documents and Mr. Katsaris'

deposition testimony, the Court concludes that Mr. Katsaris is qualified

pursuant to Rule 702 "to render opinions in the fields of law

enforcement policy, procedures, training, and supervision" in this case.
Pls.'s Expert Designations 1.

There is extensive evidence in the record that supports Plaintiffs'
representations of Mr. Katsaris's qualifications in their initial Expert
Designation, including decades serving in law enforcement as an officer,
supervisor, and trainer. *Id.* at 1–2; Curriculum Vitae 26–30; 39, 45–46.
Additionally, Mr. Katsaris has over three decades of experience
teaching topics regarding criminal law and criminal justice in an
academic setting, *id.* at 30, 32; has taken numerous academic and
training courses relevant to his field, completing a Master of Science
Degree in Criminology at Florida State University in Tallahassee,
Florida in 1971, *id.* at 30–31, 34–38, 46–51; and earned many
certifications over the course of his career, *id.* at 32–33, 45.
Furthermore, Mr. Katsaris currently consults and participates on task
forces around the country with municipal law enforcement and
correctional facilities, *id.* at 40–41; has served on many task forces and
committees in the past, *id.* at 40–41, 51; and has published and
presented his work in his field, *id.* 41–42.  Therefore, the Court
determines that Mr. Katsaris has developed specialized knowledge in

14

the fields of law enforcement policy, procedures, training, and supervision through both academic training and credentials, and practical experience.

Regarding Mr. Katsaris's methodology, the Court determines that Mr. Katsaris formulated his opinions after applying his specialized knowledge to the evidence presented in the record.  Expert Report 3. Mr. Katsaris concluded that Defendant Officer Gomez and the EPPD officers acted "below recognized standards of police practices" and had a "lack of training, discipline, and policy guidance" that directly contributed to the alleged constitutional violations in this case.  *Id.* at 55.  These conclusions are all relevant to the issues in this case. Furthermore, for each conclusion, Mr. Katsaris identified the parts of the record he relied upon when developing his opinion.  *Id.*  Thus, the Court is of the opinion that at the very least, Mr. Katsaris is an expert in his field, who is capable of giving relevant testimony in this case and articulating a methodology that is reliable by the preponderance of the evidence standard.

## B.    Municipal Liability Factors

Pursuant to the municipal liability standard set forth in *Monell*, to hold Defendant City of El Paso liable for the actions of the EPPD officers, including Defendant Officer Gomez, who caused Mr. Erik Salas-Sanchez's [hereinafter "Mr. Salas-Sanchez"] death, Plaintiffs "must identify:  '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'"  *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

At summary judgment, the Court permitted Plaintiffs to proceed to trial on three theories of liability:  (1) that the EPPD failed to institute proper procedures to ensure officers employ appropriate tactics when dealing with persons suspected of suffering mental illness; (2) that the EPPD failed to properly investigate and discipline officers involved in excessive use of force; and (3) that the EPPD failed to train officers on how to handle individuals suffering from a mental health crisis.  Def. City of El Paso Summ. J. Order 130–31.  The Court rejects Defendant City of El Paso's arguments for excluding Mr. Katsaris's

16

testimony on *Monell* issues at this time and will address the scope of the opinion at trial.

###### a.    *Failure to institute proper procedures*

Regarding the first theory that the EPPD failed to institute proper procedures to ensure officers employ appropriate tactics when dealing with persons suspected of suffering from mental illness, Defendants argue that Mr. Katsaris's opinion on EPPD policies regarding warrantless entry when executing an "emergency detention order"[2] [hereinafter "EDO"] includes an inadmissible legal conclusion and uses methodology that is unreliable.  Def. City of El Paso Mot. 7; Def. Officer Gomez Mot. 9–10.

During his deposition, Mr. Katsaris rendered the opinion that the EPPD's written EDO policy was  facially deficient because its language did not include what the Fifth Circuit requires for a policy to be constitutional.  Dep. Tr. 72–77 (at one point reading directly from *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012)).

---

[2] An EDO is a mechanism under Texas law that allows officers to detain a person who is perceived to need mental health treatment in specified circumstances.  *See generally* Tex. Health & Safety Code Ann. § 573.001.

Defendants argue that this opinion is an inadmissible legal conclusion that the EDO policy was unconstitutional, which forms the unreliable basis for Mr. Katsaris's conclusion that EPPD officers are improperly trained pursuant to this unconstitutional policy.  Def. City of El Paso Mot. 7; Def. Officer Gomez Mot. 9–10; *see also infra* III.A.c (addressing Mr. Katsaris's opinions regarding EPPD officer training).

Plaintiffs' counterargument highlights the nuances of Mr. Katsaris's testimony, characterizing his opinion as analyzing the adequacy of the EDO policy in the context of recognized practices and legal standards.  Resp. 8.  The Court considers this fine distinction significant.  Whereas Mr. Katsaris could not testify that the EDO policy was unconstitutional, it would be admissible for him to testify to policy structure, standards, and the like.  Such testimony would be relevant to the jury as it resolves the factual issue of the EDO policy's content in deciding the ultimate issue of the policy's constitutionality.  Therefore, the Court shall permit Mr. Katsaris to provide his opinion regarding the contents of the EDO policy, recognizing the burden on the parties to ensure that Mr. Katsaris does not stray into rendering conclusions on the policy's constitutionality.

18

Furthermore, the Court refrains from entering a final determination on whether Mr. Katsaris may reference Fifth Circuit caselaw when defining the recognized standards and legal practices for an adequate EDO policy. Notably, Plaintiffs identify that Defendants have not substantiated their challenge with positive law. *Id.* at 16. Additionally, Defendants may intend to call their own experts whose testimony may similarly rely on caselaw to define recognized standards and legal practices. *Id.*; Resp. Ex. 2 (Expert Report of John J. Ryan). Should Defendants decide to renew their objection at trial, the Court would benefit from examples of prior cases, and any determination would bind all experts equally.

### b. *Failure to investigate and discipline*

Regarding the second theory that the EPPD failed to investigate and discipline officers involved in excessive use of force, Defendant City of El Paso argues that Mr. Katsaris's opinions are unreliable and prejudicial. Def. City of El Paso Mot. 11–14. For both opinions, Defendant City of El Paso takes exception to Mr. Katsaris's use of instances that took place after the events of this case, and that the number of instances is insufficient to provide the basis of a reliable

19

opinion.  Def. City of El Paso Mot. 8–10.  At summary judgment, the
Court rejected these arguments and permitted Plaintiffs to proceed to
trial and make their record.  Def. City of El Paso Summ. J. Order 52–
54.  The Court shall not reconsider its decision and rejects Defendant
City of El Paso's argument.  Because this is the only basis for Defendant
City of El Paso's challenge to the opinion on a failure to discipline, the
Court shall not exclude Mr. Katsaris's testimony to the same.

Additionally, Defendant City of El Paso argues that Mr. Katsaris's
opinions on EPPD investigative procedures are "conclusory, insufficient,
[and] constitute speculation."  Def. City of El Paso Mot. 11.  Specifically,
Defendant City of El Paso challenges the factual basis for Mr. Katsaris's
assessment of how officer-involved shootings are conducted, and his
conclusion that the Shooting Review Board is not presented with non-
officer witness testimony during disciplinary proceedings.  *Id.* at 12.  If
Mr. Katsaris cannot substantiate either position, Defendants argue, he
cannot render a reliable opinion on whether the EPPD failed to
investigate as a basis for municipal liability.  *Id.* at 12–13.

Plaintiffs respond that Mr. Katsaris provides the supporting
evidence for his conclusions in his Expert Report.  Resp. 12; *see* Expert

20

Report 42–51.  Far from "conclusory and vague," Plaintiffs argue, Mr.

Katsaris analyzes how the EPPD investigated Mr. Salas-Sanchez's

death and the other instances presented to prove a pattern, identifying

what he considers to be departures from recognized practices and

procedures that could undermine an investigation.  Resp. 12–13.  On

this point, Defendant City of El Paso is particularly concerned with the

lack of evidence as to whether the investigation into each of these uses

of force was actually undermined through the perceived flaws.  Def. City

of El Paso Reply 7 ("It's simply a conclusory opinion with no specifics.").

While Plaintiffs clearly articulate that the purpose of offering Mr.

Katsaris's testimony is to identify procedural weaknesses in EPPD

investigations and the risks involved, Defendant City of El Paso fixates

on whether the risks actually came to fruition in this case.

Defendant City of El Paso cannot be faulted for classifying Mr.

Katsaris's opinions on investigative practices as vague.  Plaintiffs are

correct that Mr. Katsaris is qualified to provide relevant testimony on

EPPD investigative practices and procedures that are reliable given his

application of specialized knowledge to the facts in the record.  Yet Mr.

Katsaris rarely defines what the recognized practice or procedure might

21

be, opting instead to define what it is not.  *See, e.g.*, Expert Report 47 ("The entirety of the investigative efforts appear to be conducted in a manner consistent with a finding favorable to Officer Gomez but are inconsistent with proper protocols in an officer involved shooting.").  In so doing, Mr. Katsaris invites the logical inference that whatever the EPPD did in its investigation, the standard would be the opposite.

Should Mr. Katsaris testify at trial regarding EPPD investigative practices and procedures, he would be required to fully articulate what those practices and procedures are.  Pursuant to Plaintiffs' stated purpose for presenting Mr. Katsaris's opinions to the jury, the value of his testimony is in his ability to help the jury understand how the EPPD may have failed to properly investigate excessive force cases. Pls.'s Expert Designations 1–2.  To do so, Mr. Katsaris must provide the standards based on his expert knowledge and identify where, when, and how the EPPD investigations departed from those standards.  Of course, any opinion rendered would have to be linked to this methodology.

At this time, the Court has little reason to believe that Mr. Katsaris is unable to render an admissible opinion in support of

Plaintiffs' theory that the EPPD failed to investigate officers involved in excessive use of force.  The record before the Court suggests the existence of an expert opinion that would be relevant and reliable. Whether the Court admits or excludes this opinion will depend on the manner in which it is offered at trial.

        *c.    Failure to train*

Regarding the third theory that the EPPD failed to train its officers on how to handle individuals suffering from a mental health crisis, Defendant City of El Paso first argues that Mr. Katsaris is not qualified to render an opinion on Texas Commission on Law Enforcement [hereinafter "TCOLE"] training requirements for Texas peace officers on dealing with individuals suffering from mental health crises. Def. City of El Paso Mot. 5–7.  Defendant City of El Paso then challenges as unreliable Mr. Katsaris's methodology for concluding that there was a pattern of similar instances of excessive use of force that would indicate a failure to train.  Def. City of El Paso Mot. 7–10. Lastly, Defendant City of El Paso argues that Mr. Katsaris used an unreliable methodology to conclude that the EPPD failed to adequately

train its officers on how to make a warrantless entry.  Def. City of El Paso Mot. 7, 17.

First, regarding Mr. Katsaris' qualifications, Defendant City of El Paso maintains that Mr. Katsaris lacks familiarity with the relevant TCOLE requirements generally and how the EPPD has instituted these trainings.  *Id.* at 6 ("He simply lacks the training, education and experience to testify regarding TCOLE or State of Texas-mandated training requirements for mental health and a failure on the part of the City of El Paso to comply.").

Plaintiffs counter that though Mr. Katsaris has not testified as to TCOLE mental health training requirements in the past, he has experience with TCOLE as applied by the Houston Police Department and he reviewed the training provisions relevant to this case before rendering his opinion.  Resp. 6.  According to Plaintiffs, Mr. Katsaris used this knowledge to review the record and determine that the EPPD failed to meet state training requirements, including providing relevant mental health training to Defendant Officer Gomez and EPPD Officer Rivera.  *Id.* at 7.

In its Reply, Defendant City of El Paso avers that Mr. Katsaris's lack of specific knowledge regarding TCOLE mental health requirements and how those requirements are applied by the EPPD render his testimony unqualified and unreliable. Def. City of El Paso Reply 3–4 ("[Mr.] Katsaris failed to and cannot point to any specific components of the City's mental health training curriculum that he believes falls short of TCOLE Requirements . . . he does not identify what they 'should have been taught and weren't.'"). While focusing its argument on Mr. Katsaris's ability to provide an opinion on whether the EPPD substantively complied with TCOLE requirements, it does not address Plaintiffs' assertion that Mr. Katsaris is qualified to review the record and provide a reliable opinion on whether Defendant Officer Gomez and EPPD Rivera participated in the required trainings. *See* Resp. 7.

As the Court noted at summary judgment, the ultimate issue is whether the EPPD training policies are constitutionally inadequate. Def. City of El Paso Summ. J. Order 121. Mr. Katsaris is an expert in the field of law enforcement training, who has experience with TCOLE requirements as applied in Houston, and is capable of reliably

25

reviewing a record and explaining to the jury what he identifies as evidence of gaps in EPPD mental health training.  In so doing, Mr. Katsaris provides relevant testimony that can help the jury assess the training EPPD officers receive as it determines constitutional inadequacy.  Accordingly, the Court shall not exclude Mr. Katsaris's opinions regarding mental health training on the basis that he lacks the qualifications to do so.

Second, Defendant City of El Paso's arguments for excluding Mr. Katsaris's opinions regarding a pattern of similar uses of excessive force against mentally ill individuals have previously been raised in this case. Def. City of El Paso Mot. 8–10.  As the Court has already done with Defendant City of El Paso's challenges to Mr. Katsaris's opinions on a failure to investigate and discipline, the Court rejects this argument once again.

Third, Defendant City of El Paso challenges Mr. Katsaris's opinion that the EPPD failed to train its officers on warrantless entry.  Mr. Katsaris reviewed the EPPD officers' actions in this case and concluded that the way the EPPD officers executed the EDO reflects improper training.  Expert Report 39–41.  Defendant City of El Paso argues that

26

this conclusion is "nothing more than total impermissible speculation" and relies on Mr. Katsaris's misreading of the EDO policy language. Def. City of El Paso Mot. 7, 17.

Plaintiffs counter that Mr. Katsaris's opinion is not speculative and provides the jury with relevant insight on how the EPPD officers' actions were inconsistent with what Mr. Katsaris would expect of officers who had received proper training. Resp. 9. As Plaintiffs characterize, "[Mr.] Katsaris testified that the officers' actions did not reflect that they activated any knowledge as to when to make an entry to effectuate an EDO and the standard appeared 'very vague to them.'" *Id.* (citing Dep. Tr. 66–67). Mr. Katsaris supported this conclusion through "analyz[ing] the officers' actions in light of recognized and accepted police practices." *Id.* (citing Expert Report 6–25). Therefore, his conclusions on the EPPD officers' actions goes to the ultimate issue of whether the EPPD provides adequate training. *Id.*

Defendant City of El Paso rejects this position, asserting that "[a]n officer can be fully and completely trained, get into the field and act improperly and contrary to the training; and this is not sufficient to then suggest the training was necessarily insufficient based on the

officers' actions." Def. City of El Paso Reply 5. The Court does not consider this a complete representation of Mr. Katsaris's opinion.

Rather, Mr. Katsaris's observations on the EPPD officers' actions are made in conjunction with his views on deficiencies in the EDO policy. Def. Tr. 81. Defendants' assertions regarding Mr. Katsaris's misreading of the EDO policy language will provide fertile ground for cross-examination, but does not serve as the basis for exclusion at this juncture. His testimony provides relevant information to the jury regarding how to consider both aspects individually, as well as what the evidence suggests about EPPD training broadly. Accordingly, the Court shall not exclude Mr. Katsaris's opinions regarding a failure to train on warrantless entry.

## B.  Legality of EPPD Officers' Actions During and After Warrantless Entry

Both Defendants seek to exclude Mr. Katsaris's opinions regarding the lawfulness of the EPPD officers' warrantless entry into the Salas-Sanchez's residence, arguing that the opinions are unreliable, irrelevant, prejudicial, and include inadmissible legal opinions. Def. City of El Paso Mot. 15–18; Def. Officer Gomez Mot. 9–11. Additionally,

Defendants seek to exclude Mr. Katsaris's opinions regarding the lawfulness of the EPPD officers' actions once inside the home, arguing that the opinions are irrelevant and prejudicial. Def. City of El Paso Mot. 22–23; Def. Officer Gomez Mot. 11–12. After due consideration, the Court concludes that it should grant Defendants' request to exclude testimony admitted for the narrow purpose of rendering an opinion on the constitutionality of the EPPD officers actions after they entered the Salas-Sanchez's residence.

### a. During warrantless entry

After reviewing the deposition testimony of the EPPD officers regarding the moments leading up to their warrantless entry into the Salas-Sanchez's residence, Mr. Katsaris rendered an opinion that the conditions did not satisfy any legal exception for entering a private property without a warrant. Expert Report 6–25. Defendants arguments for exclusion rely heavily on their positions regarding what constitutes an inadmissible legal conclusion. Def. City of El Paso Mot. 15–18; Def. Officer Gomez Mot. 9–11. Defendant City of El Paso objects to Mr. Katsaris rendering an opinion on any individual element of an exception, such as whether there were exigent circumstances. Def. City

29

of El Paso Mot. 16.  Both challenge Mr. Katsaris's opinion as improperly suggesting that a warrantless entry pursuant to a deficient EDO policy would be unlawful, or that the EPPD officers' warrantless entry was unlawful because they failed to notify a supervisor beforehand.  Def. City of El Paso Mot. 16; Def. Officer Gomez Mot. 9–10.

As explained in the analysis of Mr. Katsaris's opinion on the contents of the EDO policy, the Court will refrain from defining a legal opinion until presented with actual testimony at trial.  *Supra* III.A.a. Here, it is likely that Mr. Katsaris can provide some form of relevant and reliable testimony that would assist the jury in understanding how law enforcement officers apply legal requirements for warrantless entry in the field.  *See* Resp. 16 (arguing that law enforcement officers "are expected to have a working knowledge of clearly established law" and an expert could explain those procedures to a jury (citation omitted)). Accordingly, the Court shall not exclude such testimony at this time, mindful that the scope of that testimony may be confined to ensure that Mr. Katsaris provides admissible evidence that's probative value is not substantially outweighed by its prejudicial effect.

Conversely, testimony regarding the legal effect of complying or failing to comply with the EDO policy carries far greater risk of constituting a legal opinion. It would likely be a legal opinion if an expert testified that all warrantless entries pursuant to an unconstitutional policy are de facto unconstitutional, regardless of its logical persuasiveness. Similarly, an expert likely could not testify that the same principle is true if the law enforcement officer fails to call his or her supervisor in compliance with the policy.

Simultaneously, it is unclear that Defendants' identified legal conclusions are actually Mr. Katsaris's expert opinions. In his deposition testimony regarding deficiencies in the EDO policy and the EPPD officers' failure to call a supervisor, Mr. Katsaris provided the following:

> What I have in my opinion – and maybe I expressed it in a more broad term – is that the officers did not act in concert with their own policy, period, very clearly, and that the policy itself is deficient to the extent that – and I'll let attorneys work on . . . whether or not they call it a constitutional deviation. I'll just say because of my level of training, . . . I would call it that.
>
> But let's say, as an expert, I'm going to say that my expert analysis says it does not give practical police direction sufficient according to the law.

31

Dep. Tr. 77:22–78:8.  The Court is mindful of the high likelihood that Mr. Katsaris or a similar expert in his field would personally harbor legal opinions.  Furthermore, were Mr. Katsaris to attempt to share one of his legal opinions at trial, it would be inadmissible pursuant to Federal Rule of Evidence 704(a).  Until such time, the Court shall not enter a determination on what is now merely a hypothetical evidentiary issue.

### b.   *After warrantless entry*

During Mr. Katsaris's deposition, Defendant City of El Paso's counsel asked Mr. Katsaris:  "Are you offering the opinion that everything that was done in the home after they entered was either unreasonable or not justified because of the reason they entered the home?" Dep. Tr. 209:6–9.  Plaintiff's counsel objected that the "[q]uestion asks for a legal conclusion."  *Id.* at 209:10–11.  Mr. Katsaris gave an answer that suggests he agrees with the proposition of the question.  *Id.* at 209:15–18.  Subsequently, Defendant Officer Gomez seeks to exclude any "opinion(s) that the entry into the home causally produced an unconstitutional use of force."  Def. Officer Gomez Mot. 12.

32

The Supreme Court of the United States has rejected the legal theory that a preceding constitutional violation can serve as the basis for an excessive force liability claim. *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546–47 (2017) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Accordingly, the Court shall exclude Mr. Katsaris's testimony regarding the EPPD officers' actions as they relate to this inadmissible legal opinion.

## C.   State of Mind

Throughout Mr. Katsaris's Expert Report and deposition testimony, Mr. Katsaris provides a number of opinions regarding the EPPD officers' actions leading up to and including their interactions with Mr. Salas-Sanchez. Defendants seek to exclude portions of Mr. Katsaris's analysis as improper opinions on the EPPD Officers' and Mr. Salas-Sanchez's states of mind. Def. City of El Paso Mot. 19–22; Def. Officer Gomez Mot. 12–16. As Defendant Officer Gomez articulates in his Motion, this request includes:

> (1) whether [Mr. Salas-Sanchez] intended to commit the offense of burglary of a habitation; (2) whether [Mr. Salas-Sanchez] intended to harm himself, his mother, Officer Gomez or the other Officers present; or (3) his unsupported

belief regarding the state of mind of any Officer involved in the encounter.

Def. Officer Gomez Mot. 16.  Thus, these opinions should be excluded as "irrelevant, unreliable and . . . unreasonably prejudicial."  Def. City of El Paso Mot. 21.

Defendants arguments rely on a characterization that Mr. Katsaris renders "conclusory, speculative" opinions on the underlying intent of each individual's actions based on his personal assessment of the case.  Def. City of El Paso Mot. 21 (citing *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed. Appx. 534, 541 (5th Cir. 2007) ("[A]n expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind.").  For example, Defendant Officer Gomez argues that Mr. Katsaris improperly concluded that Mr. Salas-Sanchez "did not commit the offense of burglary of a habitation across the street because [Mr. Salas-Sanchez] did not intend to commit a felony while inside the home."  Def. Officer Gomez Mot. 13 (citing Dep. Tr. 138–41).

Plaintiffs argue that Mr. Katsaris's opinions go to the facts that informed the EPPD officers' decision-making at the time of the incident,

34

and whether their approach to Mr. Salas-Sanchez was "consistent or inconsistent with police practices." Resp. 19. Yet Mr. Katsaris's opinions risk extending beyond such an objective purpose. As Defendant City of El Paso notes:

> Mr. Katsaris may be able to offer an opinion regarding training in regards to mental health or the officers' actions and statements consistent with fear or lack thereof, he cannot offer an opinion that [Mr.] Salas-Sanchez had no intent/state of mind to harm the officers.

Def. City of El Paso Mot. 20–21. On this point, the Court and Defendants are in agreement.

However, the Court's adoption of Defendants' position does not discount Mr. Katsaris's ability to render a relevant, reliable opinion on these same events that would help a jury consider how the EPPD officers actions differed from the recognized standard practices and procedures. Such an opinion would necessarily require a description of the facts and the EPPD officers' testimony providing context for their actions. *See* Def. Officer Gomez Mot. 15 ("Mr. Katsaris cannot testify to as to state of mind of any Officer involved in the incident or investigation or their credibility, unless such an opinion is supported by an actual statement or testimony."). Therefore, the Court shall exclude

35

Mr. Katsaris's testimony to the extent that it relates to his opinion on an individual's state of mind, recognizing that a similar opinion may be admissible if offered in a suitable manner at trial.  Only after the contours of this testimony are determined will the Court be able to assess whether the opinion's probative value is substantially outweighed by its prejudicial effect.

### D.   Witness Credibility

Similar to their concerns regarding Mr. Katsaris's opinions on states of mind, Defendants argue that Mr. Katsaris improperly provides opinions on the EPPD officers' witness credibility when he compares his interpretation of the facts with the EPPD officers' deposition testimonies.  Def. City of El Paso Mot.18–19 (citing *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996), for the proposition that an expert witness may not evaluate witness credibility); Def. Officer Gomez Mot. 15 ("Expert . . . testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations." (quoting *Beasely*, 72 F.3d at 1528)).  Primarily urged by Defendant City of El Paso,

Defendants seek to exclude opinions on witness credibility as irrelevant, unreliable, and unreasonably prejudicial.  Def. City of El Paso Mot. 2.

Specifically, Defendant City of El Paso argues that in analyzing the EPPD officers' actions, Mr. Katsaris "necessarily opines on their credibility" by concluding that the EPPD officers' stated reasons for acting are inconsistent with his interpretation of the actions taken.  *Id.* at 18.  As Defendant City of El Paso elaborates, Mr. Katsaris does not provide "testimony on proper policing standards and conduct, but he is in essence telling the jury who to believe."  *Id.* at 19.

Having reviewed Defendant City of El Paso's cited sections in the Expert Report and deposition transcript, Def. City of El Paso Reply 11, the Court rejects Defendant City of El Paso's position.  As Plaintiffs correctly identify, Mr. Katsaris's opinions do not offer an opinion on credibility and are limited to "specifically identifying how the officers' actions are inconsistent with police procedures."  Resp. 17.  The larger context of Mr. Katsaris's comments show that he does not provide an opinion that goes directly to the EPPD officers' credibility.

Certainly, because Mr. Katsaris's conclusions rely in part on the EPPD officers' testimony, the jury may be able to draw inferences that

concern witness credibility. At this time, the Court has no reason to believe that this is the purpose of Mr. Katsaris's opinion, or that the risk of such an inference is so prejudicial as to substantially outweigh the probative value of the opinion. Mr. Katsaris may provide a relevant, reliable opinion on how the EPPD officers' actions differed from recognized standard practices and procedures. This opinion could help the jury as it considers the ultimate constitutionality of the EPPD officers' actions. Accordingly, the Court shall not exclude those opinions that Defendants characterize as going to witness credibility.

### E. Blood Splatter Analysis and Bio-mechanics

Both Defendants challenge Mr. Katsaris's qualifications to testify as an expert on blood splatter analysis and bio-mechanics. Def. City of El Paso Mot. 23; Def. Officer Gomez Mot. 8–9. If Mr. Katsaris is found to be unqualified, Defendants seek to exclude his opinions regarding whether blood splatter at the scene can conclusively indicate where on his body Mr. Salas-Sanchez was shot and the direction that he fell in afterwards. Additionally, Defendants seek to exclude Mr. Katsaris's opinions on how a body might fall if shot in different locations while moving in different directions, concerning a field of expertise which

Defendants identify as "bio-mechanics."  Notably, neither defendant provides a definition of bio-mechanics, which parts of Mr. Katsaris's opinions pertain to bio-mechanics, or why Mr. Katsaris is unqualified to render such opinions.[3]

Regarding Mr. Katsaris's qualifications to render an opinion on blood splatter analysis, Defendants argue that any relevant experience Mr. Katsaris has is too dated to satisfy the qualification requirements to be an expert.  Def. Officer Gomez Mot. 8; Def. City of El Paso Reply 13–14.  Specifically, Mr. Katsaris's training and primary work experience in the field took place between 1960 and 1989.  Def. City of El Paso Reply 13.  Apart from one training within the last ten years, and the occasional application of his knowledge when conducting a case analysis, Mr. Katsaris has not actively engaged with the field of blood splatter analysis for decades.  Def. Officer Gomez Reply 3 (citing Dep. Tr. 135:4–19).  Accordingly, Defendants argue, Mr. Katsaris is no longer

---

[3] Defendant City of El Paso simply provides that Mr. Katsaris "lacks the necessary experience, training, education and qualifications."  Def. City of El Paso Mot. 23.  For his part, Defendant Officer Gomez explains that Mr. Katsaris has "no 'certification' in 'human dynamics.'"  Def. Officer Gomez Mot. 9 (citing Dep. Tr. 165:18–20).

qualified as an expert on blood splatter analysis because it is unclear whether he has kept up with possible scientific developments in the field. *Id.* at 3–4.

Conversely, Plaintiffs ask the Court to consider the same experience and conclude that Mr. Katsaris is qualified. Resp. 21–22 ("[Mr.] Katsaris had taught an intensive blood splatter course for ten years, attended a blood splatter course in the last ten years, taught a forty hours course including blood analysis, and continued to apply his skills in this area in his work reviewing individual cases."). Further, Plaintiffs argue that Defendants' challenges go to the weight the jury should give to Mr. Katsaris's opinion, not his qualifications to render such. *Id.* at 22.

The Court is mindful that Plaintiffs do not present Mr. Katsaris to the jury solely for the opinion he may render regarding blood splatter analysis and bio-mechanics. Pls.' Expert Designation 1–2. His opinions on blood splatter analysis and bio-mechanics are but one contribution to the larger scope of his opinion on what may have happened that night in the Salas-Sanchez's residence. Furthermore, the relative lack of briefing on this issue indicates its simplicity: Mr. Katsaris is either

qualified, or he is not.  At this time, the Court declines to determine whether Mr. Katsaris is qualified as an expert in blood splatter analysis and bio-mechanics.  Ultimately, additional context on the testimony that will actually be offered should assist the Court in resolving this issue.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant City of El Paso, Texas's "Motion to Exclude or Limit Opinions of W. Ken Katsaris" (ECF No. 229) and Defendant Officer Mando Kenneth Gomez's "Motion to Exclude the Expert Testimony of W. Ken Katsaris" (ECF No. 231) are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' requests to exclude Mr. Katsaris's opinion that the El Paso Police Department Officers' entry into the Salas-Sanchez residence causally produced an unconstitutional use of force are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' requests to exclude Mr. Katsaris's testimony to the extent that it renders an opinion on an individual's state of mind are **GRANTED**.

Finally, **IT IS ORDERED** that all remaining requests in

Defendants' Motions are **DENIED WITHOUT PREJUDICE**.

**SIGNED** this **17th day** of **June, 2020**.

_____

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**